FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 27, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

REBECCA LOUISE Q.,

                Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

NO: 2:17-CV-380-FVS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment.
ECF Nos. 10, 14. This matter was submitted for consideration without oral
argument. Plaintiff is represented by attorney Michael G. Thompson. Defendant is
represented by Special Assistant United States Attorney Danielle R. Mroczek. The
Court, having reviewed the administrative record and the parties' briefing, is fully
informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is
denied and Defendant's Motion, ECF No. 4, is granted.

**JURISDICTION**

Plaintiff Rebecca Louise Q.[1] (Plaintiff), filed for disability insurance benefits (DIB) on March 16, 2013, alleging an onset date of January 25, 2012. Tr. 214-18, 300. Benefits were denied initially, Tr. 162-64, and upon reconsideration, 171-72. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on August 13, 2015. Tr. 54-109. On August 28, 2015, the ALJ issued an unfavorable decision, Tr. 20-33, and on September 11, 2017, the Appeals Council denied review. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1966 and was 49 years old at the time of the hearing. Tr. 79. She completed the eleventh grade before leaving school but later got a GED. Tr. 79. She has work experience as a clerk at a boat rental business, home attendant, specimen processor at a lab, sales clerk, shelf builder, photographer assistant, hospital admitting clerk, and medical records clerk. Tr. 67-79, 93-95. She suffered

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

an industrial injury to her low back in 2012. Tr. 80. As a result, she had spinal

fusion surgery in April 2013. Tr. 59, 80. She testified that before the injury, she

had back problems for 12 years. Tr. 80. Her back "locked" and she could not bend

over, carry, or lift, and she was in pain. Tr. 80. After her back surgery, she

continues to have pain which she described as shooting or "taser" pain,

predominately in the right leg but also sometimes the left leg. Tr. 81. She testified

she cannot sit for very long and prefers not to sit. Tr. 82. She has to be able to move

frequently. Tr. 82. Lying down takes the pressure off her back. Tr. 82.

She has fibromyalgia. Tr. 82. Moving helps her fibromyalgia but hurts her

back. Tr. 82. She lies down four to five times a day for hours. Tr. 83. She has

difficulty walking and lifting. Tr. 83-84. Her hands cramp all the time. Tr. 84. She

has good days and bad days. Tr. 84. She also has a stiff neck, asthma, and

abdominal pain. Tr. 87-88.

Plaintiff testified she has had depression since she was a child. Tr. 86. She

has tried antidepressants and counseling. Tr. 86. She said it comes and goes and for

the most part she can "deal with it." Tr. 86. She is forgetful. Tr. 91.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158

(9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must

also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since January 25, 2012, the alleged onset date. Tr. 22. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, fibromyalgia, obesity, and affective disorder. Tr. 22. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 23.

The ALJ then found that Plaintiff had the residual functional capacity to perform sedentary work from January 25, 2012, to January 20, 2014, with the following additional limitations:

> [S]he needed the option to alternate between sitting and standing every 20-30 minutes; she could only frequently reach, handle, and finger with both upper extremities, but only occasionally reach overhead bilaterally; she could not kneel, crouch, crawl or climb ladders, ropes, scaffolds, and could only occasionally perform other postural activities; she must avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants, and must avoid all exposure to hazards, including unprotected heights and moving mechanical parts; she could perform only simple routine tasks with a reasoning level of 2 or less; and she could have no more than superficial contact with the public, supervisors, and coworkers.

Tr. 41. The ALJ then found that after January 20, 2014, Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> [S]he can sit only 2-3 hours total in a workday and needs the option to alternate between sitting and standing every 20-30 minutes; she can only frequently reach, handle, and finger with both upper extremities, but only occasionally reach overhead bilaterally; she cannot kneel, crouch, crawl or climb ladders, ropes, scaffolds, and can only occasionally perform other postural activities; she must avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants, and she must avoid all exposure to hazards, including unprotected heights and moving mechanical parts; she can perform only simple routine tasks with a reasoning level of 2 or less; and she can have no more than superficial contact with the public, supervisors, and coworkers.

Tr. 26.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 31. After considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the

ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform such as production assembler, document preparer, and agricultural produce sorter.  Tr. 32-33.  Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 25, 2012, through the date of the decision.  Tr. 33.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act.  ECF No. 10. Plaintiff raises the following issues for review:

1.      Whether the ALJ properly considered the medical opinion evidence;

2.      Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.      Whether the RFC includes all limitations supported by the record.

ECF No. 10 at 8-23.

**DISCUSSION**

**A.      Medical Opinion Evidence**

Plaintiff contends the ALJ failed to properly consider the opinions of examining psychologist, Thomas Genthe, Ph.D.; treating physician Corrine Bresko, M.D.; medical expert Reuben Beezy, M.D.; and Brenda Roberts, LISCW.  ECF No. 12 at 12-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

*1. Thomas Genthe, Ph.D.*

Dr. Genthe examined Plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form in July 2015. Tr. 1045-45. Dr. Genthe diagnosed major depressive disorder and assessed six moderate limitations and one marked limitation in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 1044-45. Dr. Genthe opined that Plaintiff was unlikely to function adequately in a work setting until her psychological symptoms were managed more effectively. Tr. 1045. He opined that a period of six months would likely be sufficient to address her treatment needs and to regain the emotional functioning necessary to resume full time work. Tr. 1045.

Because Dr. Genthe's opinion was contradicted by the opinion of Michael Regets, Ph.D., Tr. 137-38, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Genthe's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Genthe's opinion is internally inconsistent. Tr. 30. An ALJ may reject opinions that are internally inconsistent. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). A discrepancy between a provider's notes and observations and the provider's functional assessment is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. The ALJ noted Dr. Genthe's mental status exam findings were mostly unremarkable and found they are incongruent with the moderate and marked limitations assessed. Tr.

30.  The mental status exam findings indicate Plaintiff's insight and judgment were fair to poor, but Plaintiff's appearance, attitude and behavior, thought process and content, orientation, memory, fund of knowledge, concentration and abstract thought were all normal.  Tr. 1046.  The ALJ's conclusion that Dr. Genthe's assessment of limitations was inconsistent with his exam findings was reasonable and based on substantial evidence.

Plaintiff observes the ALJ indicated that Dr. Genthe reported a global assessment of functioning (GAF) score of 57, yet Dr. Genthe did not actually assess a GAF score.  ECF No. 10 at 9; Tr. 30.  Plaintiff contends this error undermines the ALJ's finding of inconsistency.  ECF No. 10 at 9.  However, nothing in the ALJ's discussion indicates the ALJ compared the purported GAF score to Dr. Genthe's opinion as the basis for the finding of internal inconsistency.  Tr. 30.  Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999). "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing."  65 Fed. Reg. 50746-01, 50765 (August 21, 2000).[2]

---

[2] The GAF scale is no longer included in the DSM-V.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (Am. Psychiatric Ass'n 5th ed.) (2013).

Thus, the nonexistent GAF score would have had little bearing on the ALJ's evaluation of the limitations assessed by Dr. Genthe.

The ALJ misattributed a GAF score to Dr. Genthe's opinion, but the error is harmless. As noted *supra*, the ALJ relied on the mental status exam findings in concluding Dr. Genthe's opinion is inconsistent. Tr. 30. "Even when part of an ALJ's five-step analysis is not linguistically completely clear or exhaustively complete, or precisely factually accurate, some errors are legally harmless, such as errors which do not affect the ultimate result of the analysis." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir.2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir.1990); *Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1380 (9th Cir.1984)).

Plaintiff also contends the ALJ "did not set forth the rationale as to why the five 'moderate' functional limitations [assessed by Dr. Genthe] would not in combination result in a 'marked' ability to complete a normal work day and work week without interruptions from psychologically based symptoms." ECF No. 10 at 7. This argument fails because there is no basis in the record to conclude that the five moderate limitations assessed by Dr. Genthe are equivalent to a marked ability to complete a normal workday and work week.

Second, the ALJ found Dr. Genthe's report is inconsistent with the clinical findings of treating medical sources. Tr. 30. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20

C.F.R. § 404.1527(c)(4) (2012) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Nguyen*, 100 F.3d at 1464. The ALJ discussed the mental health treatment record and noted that there were few objective findings of psychological abnormality since most mental status exam findings were essentially normal. Tr. 29, 756, 1022, 1041. Although Plaintiff complains the other medical sources are "neither identified nor compared," ECF No. 10 at 11, the ALJ's reference to previously cited sources is sufficient. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). All reasons discussed by the ALJ constitute "grounds invoked by the agency," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), or "reasons the ALJ assert[ed]," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). This is a specific, legitimate reason supported by substantial evidence.

Plaintiff contends the ALJ did not address the "mental treatment" of Pamela Clark, Psy.D., and Sonya Wood, Ph.D. ECF No. 10 at 10-11 (citing Tr.908-11, 1026-27). Dr. Clark and Dr. Wood both completed psychological evaluations but did not assess any functional limitations. Tr. 908-11, 1026-27. Although Plaintiff does not describe the findings of Dr. Clark or Dr. Wood or link them to her argument with any specificity, presumably Plaintiff intends to suggest their evaluations support Dr. Genthe's findings.

In October 2012, Dr. Clark diagnosed adjustment disorder, chronic, with mixed anxiety and depressed mood and indicated "r/o" (rule out) major depressive

disorder.  Tr. 911.  Dr. Clark found Plaintiff was pleasant and cooperative with

appropriate interaction and eye contact; her attention span and concentration

seemed good and her short-term and long-term memory was at least partially

intact; she had normal speech and appeared coherent; there was no evidence of

psychotic process or a thought disorder; no evidence of flight of ideas, obsessions,

intrusive thoughts; she was focused on the evaluation and her symptoms.  Tr. 910.

Her mood was depressed and her affect was incongruent to her mood.  Tr. 910.

Dr. Clark did not assess any functional limitations.  Similarly, in May 2014, Dr.

Wood diagnosed major depressive disorder and adjustment disorder, chronic, with

mixed anxiety and depressed mood, but did not record any mental status exam

findings or assess any functional limitations.  Tr. 1026.

The ALJ did not err by failing to discuss the evaluations of Dr. Clark and Dr.

Wood.  Where a physician's report does not assign any specific limitations or

opinions in relation to an ability to work, the ALJ need not provide reasons for

rejecting the opinion because "the ALJ did not reject any of [the report's]

conclusions." *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th

Cir. 2010); *see also Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (The

"mere diagnosis of an impairment . . . is not sufficient to sustain a finding of

disability.").  Further, the ALJ need not discuss all evidence presented but must

explain why significant probative evidence has been rejected. *Vincent v. Heckler*,

739 F.2d 1393, 1394-95 (9th Cir. 1984).  Neither evaluation includes a functional

assessment or identifies any limitations resulting from the diagnoses listed. Thus, the evaluations do not lend any particular support to Dr. Genthe's findings and are not probative in evaluating Plaintiff's RFC.

Even if the ALJ's failure to discuss the reports of Dr. Clark and Dr. Wood was error, the error would be harmless. It may be harmless error to overlook a treating source's medical opinion, but only if the error is "inconsequential to the ultimate nondisability determination" and "a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) (quoting *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). Dr. Clark's mental status exam findings are consistent with the ALJ's determination that mental status exam findings in the treatment record were essentially normal, Tr. 29, and the diagnosis of depression by Dr. Wood is consistent with the ALJ's step two finding, Tr. 22. The Court concludes no reasonable ALJ would find otherwise and thus, the error, if any, would be harmless.

Third, the ALJ found Dr. Genthe primarily relied upon Plaintiff's subjective complaints. Tr. 30. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 599; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). However, when an opinion is not more

heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008); *see also Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Here, the ALJ made a legally sufficient finding discounting Plaintiff's subjective complaints. Tr. 31; *see infra*. The ALJ's finding that the marked limitation assessed by Dr. Genthe and his conclusory statement that Plaintiff cannot sustain full time work is not consistent with his mental status exam findings or other evidence in the record is supported by substantial evidence, *supra*. Thus, the ALJ reasonably concluded that Dr. Genthe's opinion must be based primarily on Plaintiff's self-report. Tr. 30. This is a specific, legitimate reason for assigning little weight to the opinion.

  *2. Corrine Bresko, M.D.*

  In June 2015, Dr. Bresko prepared a letter supporting Plaintiff's request for disability. Tr. 1013-15. Dr. Bresko identified Plaintiff's conditions as chronic pain due to fibromyalgia and lumbar degenerative disc disease, asthma and depression. Tr. 1013. She indicated significant restrictions in nearly every exertional, postural, manipulative, and environmental area. Tr. 1013-14. The ALJ gave little weight to Dr. Bresko's evaluative statements. Tr. 29.

Because Dr. Bresko's opinion was contradicted by the opinion of Gordon Hale, M.D., Tr. 135-37, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Bresko's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found the letter is based primarily on Plaintiff's self-report. Tr. 29. As discussed *supra*, a physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149. The ALJ noted Dr. Bresko expressly states in her letter that she relied on Plaintiff's subjective reports as the basis for the restrictions and limitations assessed. Tr. 29. Indeed, Dr. Bresko repeatedly noted "she states" and "she reports," and the overall language of her findings indicates that Plaintiff's self-reported limitations were the bases for the restrictions assessed. Tr. 1013-14.

However, if the opinion is supported by clinical observations, it should not be rejected even if it also references the claimant's self-report. *See Ghanim*, 763 F.3d at 1162. The ALJ also found the restrictions indicated by Dr. Bresko are not consistent with her treatment notes. Tr. 29. *See Ghanim* at *id*; *see also Connett*, 340 F.3d at 875 (physician's opinion may be rejected if it is unsupported by treatment notes). Dr. Bresko attached a chart note to her letter and the ALJ observed that it documents a physical examination with no remarkable physical findings or abnormalities. Tr. 29, 1016-24. This is a reasonable interpretation of the evidence and a specific, legitimate reason for giving little weight to Dr. Bresko's opinion.

Plaintiff cites Dr. Bresko's exam findings of "[p]ositive for myalgias, back pain, and neck pain. **Positive knee pain.** Neurological: Positive for numbness." ECF No. 10 at 16-17 (citing Tr. 1022, emphasis in original). However, Plaintiff conflates symptoms with functional limitations. Nothing in Dr. Bresko's exam findings reflects a quantitative or functional assessment resulting from Plaintiff's diagnoses or symptoms. The fact that a diagnosis exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key*, 754 F.2d at 1549-50. The ALJ reasonably found that Dr. Bresko's exam notes do not support the limitations contained in her letter.

Second, the ALJ found Dr. Bresko's letter is inconsistent with the record as a whole. Tr. 29. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ noted Dr. Bresko's opinion is inconsistent with other credited medical opinions and findings. Tr. 29. These include the opinions of Patricia Wright, OT, Tr. 770-74, 873-75, 896-98; Robert Hoctor, OT, Tr. 371-81, and Gordon Hale, M.D., Tr. 135-37, whose opinions were credited by the ALJ. Tr. 27-28. Plaintiff suggests the ALJ should not have relied on the opinion of Dr. Hale, a reviewing physician, but the opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v.*

*Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, the ALJ cited other significant evidence, including the opinions of two occupational therapists who conducted extensive functional examinations, as well as details in the treatment record which support the ALJ's conclusions. Tr. 27-28. Thus, this is a specific, legitimate reason for giving little weight to Dr. Bresco's letter.

### 3. Reuben Beezy, M.D.

Dr. Beezy, the medical expert, testified at the hearing and identified Plaintiff's primary severe physical impairments as degenerative disc disease of the cervical and lumbar spine and fibromyalgia. Tr. 59-60. He first testified that Plaintiff's back condition "can equal [Listing] 1.04, Disorders of the Spine, with evidence of nerve root compression." Tr. 60. He then testified that he agreed with physical therapist opinions opining that Plaintiff is capable of sedentary work, with the additional limitations of avoid respiratory inhalants and no heights, occasional climbing, no stooping, kneeling, crouching, crawling, or ladders, ropes, or scaffolds. Tr. 62. He later testified that Plaintiff could sit six to eight hours in a day, if she was able to alternate sitting and standing.[3] Tr. 63-64. The ALJ gave little weight to Dr. Beezy's testimony. Tr. 29.

---

[3] The ALJ reported that Dr. Beezy "agreed the claimant would have additional limitations for handling and grasping." Tr. 29. Dr. Beezy was asked by Plaintiff's counsel to look at Dr. Bresco's letter which "talks about some difficulty with the

Because Dr. Beezy's opinion was contradicted by the opinion of Gordon Hale, M.D., Tr. 135-36, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Beezy's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ gave little weight to Dr. Beezy's testimony because he concluded that Plaintiff would equal a listing, then inconsistently concluded she is capable of sedentary work. Tr. 29. A medical opinion may be rejected by the ALJ if it contains inconsistencies. *Bray*, 554 F.3d at 1228. Plaintiff argues that Dr. Beezy did not actually testify that Plaintiff "absolutely" meets a listing, only that she "can equal" the listing. ECF No. 10 at 19. The Court finds no merit to this argument. The ALJ followed up Dr. Beezy's testimony that Plaintiff "can equal" a listing by asking about an MRI and asked, "is there any other basis for your opinion that she *equals a listing*?" Dr. Beezy replied said "no," impliedly agreeing with the ALJ's rephrasing of "can equal" to "equals a listing." Tr. 60-61. Furthermore, the Court fails to see any substantive distinction between "can equal" and "equals," and Plaintiff fails to make any argument or establish any error on that basis. This is a specific, legitimate reason for giving little weight to Dr. Beezy's opinion.

---

fibromyalgia and handling, hands cramping and stiffening. Do you see that?" Tr. 64. Dr. Beezy agreed, "it is stated as you pointed out." Tr. 65. However, Dr. Beezy did not agree to or testify about limitations regarding handling and grasping.

1   Plaintiff additionally argues that, "Dr. Beezy's testimony in a 10 to 15 minute

2   time frame, which was not in the order of how the ALJ perceived it should be, does

3   not constitute substantial evidence for rejecting such limitations." ECF No. 10 at 19.

4   Plaintiff fails to identify any basis in law or fact for this assertion and the Court find

5   it is without merit.

6       Second, the ALJ found Dr. Beezy's opinions are inconsistent with the other

7   medical evidence in the record. Tr. 29. The consistency of a medical opinion with

8   the record as a whole is a relevant factor in evaluating a medical opinion.

9   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d

10  625, 631 (9th Cir. 2007). Plaintiff fails to address this reason, and as discussed,

11  *supra*, the Court finds the ALJ's conclusions are supported by substantial evidence.

12  Thus, this is a specific, legitimate reason for giving little weight to Dr. Beezy's

13  opinion.

14      Plaintiff faults the ALJ for giving little weight to Dr. Beezy's opinion while

15  also considering Dr. Beezy's opinion at step two and in evaluating her symptoms

16  complaints. ECF No. 10 at 19. It is not necessary for an ALJ to agree with

17  everything an expert witness says in order to conclude the testimony constitutes

18  substantial evidence. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). It is the

19  ALJ's task to sort through "conflicting clinical evidence, stat[e] his interpretation

20  thereof, and mak[e] findings," which the ALJ did here. *Reddick v. Chater*, 157

21  F.3d 715, 725 (9th Cir. 1998).

For example, at step two, the ALJ found sleep apnea, abdominal pain, and asthma are not severe impairments because: (1) Plaintiff did not describe any specific limitations related to work activity secondary to any of these conditions; (2) treating source medical records do not corroborate severe findings regarding asthma; (3) objective testing revealed mild to moderate sleep apnea and no treatment was recommended; (4) the record shows no pathology leading to severe abdominal pain; (5) Dr. Hale found no evidence of a severe impairment due to sleep apnea, abdominal pain, or asthma; and (6) no treating, examining, or evaluating source ever suggested sleep apnea, abdominal pain, or asthma cause any significant restriction in her ability to perform basic work functions. Tr. 22-23. In addition, the ALJ noted Dr. Beezy's testimony supports this finding. Tr. 23, 59-60. Substantial evidence supports the ALJ's step two finding, with or without consideration of Dr. Beezy's testimony. The same analysis applies to the ALJ's consideration of Dr. Beezy's testimony regarding Plaintiff's symptom complaints. Thus, the Court finds no error with regard to the ALJ's consideration of Dr. Beezy's opinion.

### 4. Brenda Roberts, LISCW

In August 2015, Ms. Roberts wrote a letter indicating Plaintiff was receiving mental health services for depression and anxiety. Tr. 1050. Ms. Roberts indicated Plaintiff had been assessed with the Beck Depression Inventory II and the Beck Anxiety Inventory and "these self-report measures indicate both depression and

anxiety to be in the severe range." Tr. 1050. She listed Plaintiff's reported symptoms and provisional diagnoses of major depressive disorder and posttraumatic stress disorder. Tr. 1050. Ms. Roberts also noted Plaintiff appeared to be motivated to participate in therapy and continued to make progress. Tr. 1050.

As a social worker, Ms. Roberts is an "other source" under the regulations. 20 C.F.R. § 404.1513(d) (2013). [4] The opinion of an "other source" is generally given less weight than that of an acceptable medical source, such as a physician or psychologist. 20 C.F.R. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it. The ALJ gave little weight to Ms. Roberts' opinion, noting that she described Plaintiff's depression and anxiety as severe, "but provided no specific functional limitations and referenced no objective findings." Tr. 30. These reasons are a germane and supported by substantial evidence. *See Morgan,* 169 F.3d at 601 (noting an ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity");

---

[4] "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 404.1513(d) (2013).

*see also Bray*, 554 F.3d at 1228 (indicating a medical opinion may be rejected if it is unsupported by medical findings).

Plaintiff contends, "Ms. Roberts findings were in fact based upon clinical evaluation, observation, and mental testing similar to Dr. Genthe." ECF No. 10 at 12. However, Plaintiff does not cite any evidence of "evaluation, observation and mental testing" in Ms. Roberts' letter. Ms. Roberts herself noted the BDI-II and the BAI are self-report measures of depression and anxiety. Tr. 1050. Furthermore, Plaintiff's argument ignores the fact that Ms. Roberts' letter states a diagnosis and a list of symptoms but does not assess any functional limitations. *See Morgan*, 169 F.3d at 601. Plaintiff contends the ALJ had a duty to develop the record to request a functional assessment from Ms. Roberts, but this argument misconstrues the ALJ's obligation. ECF No. 10 at 13. An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150. Here, the ALJ did not find that the record was inadequate or the evidence was ambiguous. The ALJ's consideration of Ms. Roberts' letter is reasonable and supported by substantial evidence.

### 5. Michael Regets, Ph.D.

Plaintiff suggests the ALJ gave too much weight to the opinion of Dr. Regets, a reviewing psychologist. ECF No. 10 at 13. Dr. Regets reviewed the record in October 2013 and assessed six moderate limitations. Tr. 137-38. He

opined that Plaintiff is capable of understanding and remembering at least simple work tasks and instructions; can complete simple, routine tasks with normal breaks and rest periods for a 40-hour work week with occasional wane in her attention concentration; and would do best at work with superficial contact with the general public and coworkers. Tr. 137-38. The ALJ gave great weight to Dr. Regets' opinion and reasonably incorporated his assessment in the RFC finding. Tr. 25-26, 30.

Plaintiff suggests without actually arguing that the ALJ should not have given great weight to Dr. Regets' opinion. ECF No. 10 at 10. Although an ALJ must provide specific and legitimate reasons to reject contradicted medical opinion evidence, the same standard does not apply when the ALJ credits opinion evidence. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216. Plaintiff notes Dr. Regets did not have the opportunity to review the entire record, including Dr. Genthe's opinion, and that the opinion of an examining provider is generally given more weight than a nonexamining provider. ECF NO. 10 at 10 (citing *Lester*, 81 F.3d at 830). When the opinion of a nonexamining psychologist is consistent with other evidence, it may be entitled to greater weight than the opinion of an examining psychologist. *See Andrews*, 53 F.3d at 1041-43. As discussed throughout this decision, the ALJ cited substantial evidence in addition to Dr. Regets' opinion supporting his conclusions.

Further, the ALJ did not err by crediting Dr. Regets' opinion even though Dr. Regets did not review the record after October 2013. It is evident that the ALJ reviewed the entire record and weighed the later records accordingly. *See* 20 C.F.R. § 404.1545(a) (requiring the ALJ to review "all of the relevant medical and other evidence"). Indeed, the ALJ indicated, "I give great weight to the opinions of Dr. Regets based on . . . the consistency of [his] opinions with the objective evidence and opinions of treating medical providers." Tr. 30. Thus, the ALJ's consideration of Dr. Regets opinion is reasonable and based on substantial evidence.

### 6. Robert Hoctor, OT/L

Plaintiff suggests the ALJ gave too much weight to the opinion of Mr. Hoctor, an examining occupational therapist. ECF No. 10 at 15. Mr. Hoctor examined Plaintiff and completed a functional capacity evaluation in January 2014. Tr. 371-81. He noted inconsistent performance which indicated partially non-reliable data, particularly regarding material handling and grip strength testing. Tr. 371. He assessed the following limitations: lifting and carrying was limited to light physical demand; sitting was limited to occasional; bending, stooping, crouching, and kneeling were limited to occasional; climbing ladders was limited to occasional; sustained overhead work was limited to occasional. Tr. 372. Mr. Hoctor opined, "[s]ymptom magnification and disability conviction appear to be present and may be a barrier to return to work." Tr. 372.

As an occupational therapist, Ms. Roberts is an "other source" under the regulations. 20 C.F.R. § 404.1513(d) (2013). The regulations require an ALJ to consider observations by other sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2) (2013). Plaintiff notes the ALJ provided greater weight to Mr. Hoctor's functional capacity evaluation "even though he is not a medical doctor." ECF No. 10 at 15; Tr. 28. To the extent this constitutes a challenge to the weight the ALJ gave Mr. Hoctor's opinion, the argument fails.

The opinion of an "other source" may be entitled to weight depending on the particular facts of a case. *See* 20 C.F.R. § 404.1527(c) (2012); *see also Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) ("[T]hough [the nurse practitioner] is not an 'acceptable medical source,' she is an 'other source' and there are strong reasons to assign weight to her opinion."). The ALJ explained he gave the greatest weight to Mr. Hoctor's opinion because "he based his opinions upon findings from a full day of thorough evaluation and the therapist provided a thorough explanation of his findings." Tr. 28. Plaintiff does not address this finding and the Court concludes it is based on substantial evidence.[5]

_____

[5] *See infra* for discussion of Plaintiff's challenge to the ALJ's application of Mr. Hoctor's credited assessment to the RFC finding.

## B. Symptom Claims

Plaintiff contends the ALJ improperly rejected her symptom claims. ECF No. 10 at 20. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834; *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.")). "The clear and convincing [evidence] standard

is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not consistent with the medical and other evidence in the record. Tr. 27, 31.

As noted by Defendant, the ALJ provided a total of seven reasons for finding Plaintiff's subjective complaints not entirely credible: (1) Plaintiff's testimony and allegations are not consistent with the objective medical evidence; (2) Plaintiff did not put forth full effort during functional testing; (3) Plaintiff's physical symptoms improved with treatment; (4) Plaintiff's alleged limitations are inconsistent with functional evaluations by occupational therapists; (5) Plaintiff received conservative treatment for her mental symptoms; (6) Plaintiff's activities of daily living are inconsistent with her alleged limitations; and (7) Plaintiff's work

history is spotty, which undermines her claims.  Tr. 27-31; ECF No. 14 at 26-27.

Defendant challenges two of the seven reasons.  ECF No. 10 at 20; ECF No. 15 at 9.

First, Plaintiff contends the ALJ's finding that Plaintiff is not entirely credible based on her work history is not supported.  ECF No. 10 at 20.  The claimant's work record is an appropriate consideration in weighing her symptom complaints.  *Thomas*, 278 F.3d at 958-59; 20 C.F.R. § 404.1529(c)(3) (2011).  Plaintiff asserts that, "[e]ven though [Plaintiff] cannot hold a job . . . she continuously goes out and obtains employment even though it does not last which is indicative of a desire to work."  ECF No. 10 at 20 (citing Tr. 28, 67-68).  However, since 1997 Plaintiff has never had average monthly earnings sufficient to presumptively qualify as substantial gainful activity, and she has earned more than $10,000 in only four years during that time span.  Tr. 231; *see* Monthly Substantial Gainful Activity Amounts By Disability Type chart, *available at* https://www.ssa.gov/oact/cola/sga.html.  Plaintiff implies this is attributable to her disability, but her limited earnings precede her alleged onset date.  Tr. 231.  The ALJ's finding was based on a reasonable interpretation of the record and is supported by substantial evidence.

Second, Plaintiff contends substantial evidence does not support the ALJ's finding that her activities of daily are inconsistent with her alleged limitations.  ECF No. 10 at 20.  It is reasonable for an ALJ to consider a claimant's activities

which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. "Even where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ noted, for example, that despite Plaintiff's testimony that her mental limitations cause her to have difficulty with concentration and attention, Tr. 78, 86, 91, she reported a reasonably high level activities of daily living because she cares for her pets, has no problem with personal care, prepares meals, shops for groceries, and does light household chores, laundry, and dishwashing. Tr. 31, 1043. Plaintiff makes no argument other than to assert that substantial evidence does not support the ALJ's finding. ECF No. 10 at 20. Spotting an issue is insufficient to preserve it; contentions must be accompanied by reasons. *See Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir.2003). Plaintiff failed to demonstrate any error and thus, this is a clear and convincing reason supported by substantial evidence for giving less weight to Plaintiff's symptom claims.

The remaining five factors considered by the ALJ in evaluating Plaintiff's symptom claims are not challenged or addressed by Plaintiff: [6] (1) Plaintiff's testimony and allegations are not consistent with the objective medical evidence; (2) Plaintiff did not put forth full effort during functional testing; (3) Plaintiff's physical symptoms improved with treatment; (4) Plaintiff's alleged limitations are inconsistent with functional evaluations by occupational therapists; (5) Plaintiff received conservative treatment for her mental symptoms. These are all legally sufficient reasons supporting the ALJ's finding. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (indicating that while subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects); *Thomas*, 278 F.3d at 959 (finding poor effort during a physical capacity evaluation is a compelling factor undermining a claimant's symptom claims); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (determining a medical opinion indicating the claimant can perform a limited range of work may undermine a claim of disabling limitations); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008) (indicating claims about disabling pain are undermined by favorable response to conservative treatment). The ALJ's

---

[6] Arguments not made in an opening brief may be deemed waived. *Bray*, 554 F.3d at 1226.

discussion of these reasons is supported by substantial evidence in the record.  Tr. 27-31.

Even if the ALJ erred by considering Plaintiff's work history and daily activities in evaluating her subjective complaints, the other five reasons not challenged by Plaintiff are clear and convincing reasons supported by substantial evidence.  Any error would therefore be harmless.  *See Carmickle*, 533 F.3d at 1162; *Stout*, 454 F.3d at 1055; *Batson*, 359 F.3d at 1195-97.

## C.  RFC Finding

Plaintiff contends the RFC finding does not include all of the limitations supported by the record.  ECF No. 14-16, 21-22.  The RFC is "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In making this finding, the ALJ need only include credible limitations supported by substantial evidence.  *Batson*, 359 F.3d at 1197 (holding that ALJ is not required to incorporate evidence from discounted medical opinions into the RFC).

### 1.  Sitting Limitation

Plaintiff contends the ALJ's RFC finding is internally inconsistent.  ECF No. 11-12.  Specifically, Plaintiff argues the RFC finding that from January 25, 2012, to January 20, 2014, Plaintiff could perform sedentary work with no sitting limitation is inconsistent with the finding that after January 20, 2014, Plaintiff could perform

light work but sitting was limited to two to three hours in an eight-hour workday. [7]

According to Plaintiff, "the ALJ's finding that [Plaintiff] was able to increase her functional limitations from sedentary to light . . . but at the same time her sitting restriction was actually reduced . . . is internally inconsistent, not supported by medical evidence, and not supported by substantial evidence." ECF No. 10 at 14.

Plaintiff's argument is not supported by legal authority or the record and has no merit. The ALJ credited the March 2013[8] evaluation of occupational therapist

---

[7] Plaintiff asserts without citing any authority that the sedentary RFC involved a sitting restriction of six to eight hours. ECF No. 10 at 14-15. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[8] The ALJ cited an April 22, 2013 evaluation by Ms. Wright on page 60 of Exhibit 23F. Tr. 27-28. The date of that record is actually March 22, 2013. Tr. 895-98. However, the error is nominal and has no impact on the ALJ's consideration of Ms. Wright's opinion, and in all other respects the ALJ's consideration of Ms. Wright's evaluation is accurate.

Patricia Wright who found Plaintiff could occasionally lift 10-12.5 pounds; occasionally stoop, crouch, kneel, climb stairs, and reach overhead; frequently sit; and occasionally stand or walk.  Tr. 27-28.  This was reasonably translated into the RFC finding for the period from the application date to January 20, 2014, which includes a limitation to sedentary work with occasional postural limitations, plus the ALJ included a sit/stand option every 20-30 minutes.  Tr. 25.

The ALJ also credited the January 20, 2014 evaluation of occupational therapist Robert Hoctor.  Tr. 28.  Mr. Hoctor found Plaintiff was able to stand or walk frequently to continuously or up to 80 minutes at a time; her ability to reach, handle, and finger was frequent to continuous; she was able to sit for 20-30 minutes on an occasional basis; and she could climb stairs frequently; occasionally stoop, crouch, kneel, reach overhead, and climb ladders, ropes, and scaffolds.  Tr. 372, 374-75.  The ALJ found this evaluation indicates an improvement from a sedentary RFC to a light RFC.[9]  This opinion was reasonably translated into the RFC finding for the

_____

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do

period after January 20, 2014, including light work with a limitation on sitting for two to three hours during the workday with a sit/stand option every 20-30 minutes, plus postural limitations.  Tr. 25.

Plaintiff offers no substantive argument or authority for the contention that the RFC finding is inconsistent.  Plaintiff's argument implies there is an inherent inconsistency in improving in one functional area and declining in another, but there is no factual or legal basis for this position.  The functional evaluations by Ms. Wright and Mr. Hoctor constitute substantial evidence supporting the RFC finding. Plaintiff has identified no error in law or fact in the ALJ's residual functional capacity determination.

### 2.    *Ergonomic Accommodation*

Plaintiff contends the ALJ failed to include a limitation requiring an ergonomic workstation in the RFC.  ECF No. 10 at 15.  Mr. Hoctor opined, "[i]f client pursued the job position of Receptionist, General Clerk or Customer Service Representative, she will require an ergonomic workstation set-up."  Tr. 373.  He indicated she would need an ergonomic task chair, an electric height adjustable

---

substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

workstation to allow her to alternate between sitting and standing every 20-30 minutes; and an adjustable computer monitor arm. Tr. 373. Plaintiff asserts the ALJ failed to credit this limitation even though Mr. Hoctor's opinion was given great weight. ECF No. 10 at 15. However, as noted by Defendant, Mr. Hoctor indicated the ergonomic workstation was required for three specific occupations: receptionist, general clerk, or customer service representative.[10] ECF No. 14 at 37. The ALJ found Plaintiff could perform work as a price marker, router, production assembler, document preparer, and agricultural produce sorter. Tr. 32-33. None of these positions was identified by Mr. Hoctor as requiring an ergonomic workstation, and Mr. Hoctor did not opine that in general, an ergonomic workstation is necessary. Thus, the ALJ appropriately excluded the ergonomic workstation requirement from the RFC.

/ / /

/ / /

---

[10] It is noted that the ALJ found Plaintiff is not capable of performing the job of general clerk, Tr. 31, and that the occupations of receptionist and customer service representative are likely unavailable due to the social limitations contained in the RFC. Nonetheless, the ALJ did not need to address these occupations or the ergonomic workstation issue since other work is available that Plaintiff can perform.

*3. Attendance*

Plaintiff contends "there is not substantial evidence to support that [Plaintiff] would be capable of working without missing more than one day of work per month." ECF No. 10 at 21-22. Plaintiff cites the opinions of Dr. Bresko, Dr. Genthe, and Ms. Roberts, whose opinions were given little weight for legally sufficient reasons, discussed *supra*. An ALJ is not required to incorporate evidence from discounted medical opinions into the RFC. *Batson*, 359 F.3d at 1197. Furthermore, neither Dr. Bresko nor Ms. Roberts opined regarding absenteeism. Tr. 1017, 1050. While Dr. Genthe assessed a marked limitation in the ability to complete a normal workday or work week without interruption from psychologically based symptoms, Tr. 1045, there is no basis in the record to conclude that limitation translates to missing work one day per month.

Plaintiff also cites a January 2010 letter from Mike Harris, M.D., which states Plaintiff's conditions "flare up periodically" resulting in the need for medical treatment "as well as time off for recovery (usually 2-3 days)." Tr. 563. There is no basis in the record or Dr. Harris' letter to translate "periodically" into absence from work once a month. Furthermore, Dr. Harris' letter is dated two years before the alleged onset date. Tr. 563. The ALJ considered evidence from before the alleged onset date but assigned it little weight "because of [its] remoteness in time relative to the alleged onset date and the medical evidence described in this decision." Tr. 30. Medical opinions that predate the alleged onset of disability are of limited relevance.

*Carmickle*, 533 F.3d at 1165.

The RFC and hypothetical to the vocational expert contained the limitations the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper. *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Bayliss*, 427 F. 3d at 1217-18.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** March 27, 2019.

_____s/ Rosanna Malouf Peterson_____
ROSANNA MALOUF PETERSON
United States District Judge